SYLLABUS

This syllabus is not part of the Court's opinion. It has been prepared by the Office of the Clerk for the convenience of the reader. It has been neither reviewed nor approved by the Court and may not summarize all portions of the opinion.

## Verizon New Jersey, Inc. v. Borough of Hopewell (A-22-23) (088421)

**(NOTE: The Court did not write a plenary opinion in this case. The Court affirms the judgment of the Appellate Division substantially for the reasons expressed in Judge Accurso's opinion, ___ N.J. Super. ___ (App. Div. 2023).)**

**Argued May 2, 2024 -- Decided July 25, 2024**

**PER CURIAM**

This appeal centers on the meaning of the phrase "Local Telephone Exchange" (LTE) in N.J.S.A. 54:4-1. As relevant here, that statute subjects to taxation the personal and real property of a local exchange telephone company, defined as "a telecommunications carrier providing dial tone and access to 51% of a local telephone exchange."

In August 2008, plaintiff Verizon New Jersey, Inc., notified the Borough of Hopewell that it would not be filing a return for the 2009 tax year because it no longer provided dial tone or access to at least 51% of the LTE within the Borough. Verizon based its position on the then-recent assignment of 10,000 new phone numbers served by AT&T to the Hopewell rate center. Verizon contended that, in light of those new phone numbers, it no longer provided dial tone and access to 51% of the phone numbers associated with the Hopewell rate center. Hopewell took the position that the Hopewell LTE was defined by geographic boundaries rather than assignment to the rate center and that, because the phone numbers were physically based in Pennington, outside of Hopewell, Verizon remained the provider for at least 51% of the Borough's LTE.

Considering their arguments and the legislative history of N.J.S.A. 54:4-1, the Tax Court adopted a definition of the LTE "based on . . . geographic boundaries." 31 N.J. Tax 49, 75 (Tax 2019). The court elaborated that "the term 'local telephone exchange' is a common and historical concept in the telecommunications industry. It is a geographically defined area serviced by a physical construct that functions as the building block for service delivery . . . ." Id. at 74. The Tax Court found the fact "[t]hat the business personal property being taxed is physically located within the boundaries of the exchange . . . demonstrates a geographic component to the definition of" an LTE. Id. at 74-75.

1

The Appellate Division affirmed. ___ N.J. Super. ___, ___ (App. Div. 2023) (slip op. at 71-72). The court was "convinced by the centrality of the local exchanges to the structure of the telephone industry . . . , as well as by the testimony of the experts in this case, that when the Legislature added the qualifier 'local exchange' to 'telephone companies' . . . [when it amended N.J.S.A. 54:4-1] in 1989, it intended the phrase 'local telephone exchange' to be understood as a specified geographical area, the territorial boundaries of which were as depicted on exchange maps on file." Id. at ___ (slip op. at 71-72). The Appellate Division was "also convinced that understanding is the most sensible when considering how New Jersey's 209 local exchanges were built and developed." Id. at ___ (slip op. at 72).

The Court granted certification. 256 N.J. 340 (2024).

**HELD:** The judgment of the Appellate Division is affirmed substantially for the reasons expressed in Judge Accurso's opinion. The Court concurs with the Appellate Division "that 'local telephone exchange' as used in N.J.S.A. 54:4-1 means a local telephone network within a defined geographical area as depicted on Verizon's tariff exchange maps." ___ N.J. Super. at ___ (slip op. at 52).

1. As the Appellate Division noted, the phrase "local telephone exchange" in N.J.S.A. 54:4-1 is a term of art. Id. at ___ n.22 (slip op. at 55 n.22). When a statute that uses a term of art was enacted decades ago, as this one was, courts should look to the commonly understood technical meaning of the term during the timeframe when the phrase was chosen by the Legislature. Contrary to Verizon's assertions, the written evidence before the Court from the relevant time period, including Verizon's own documents, points only toward a geographical definition of a "local telephone exchange." (pp. 2-4)

2. Regarding Verizon's argument that the Appellate Division's decision "subject[s] Verizon and other [incumbent local exchange carriers] to an outdated tax assessment method, divorced from current practices within the telecommunications industry," the Court explains that it is constrained to interpret the statutory text before it and may neither update nor amend the text to better fit current technological realities. If the Legislature agrees with Verizon that the current tax assessment method is out of date, it is of course free to amend the statute. (pp. 4-5)

**AFFIRMED.**

**CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in this opinion. JUSTICE FASCIALE did not participate.**

2

Verizon New Jersey, Inc.,

Plaintiff-Appellant,

v.

Borough of Hopewell,

Defendant-Respondent.

_____

State of New Jersey,

Intervenor.

On certification to the Superior Court,
Appellate Division.

| Argued | Decided |
| --- | --- |
| May 2, 2024 | July 25, 2024 |

Natalie H. Mantell argued the cause for appellant
(McCarter & English, attorneys; Natalie H. Mantell and
Farhan Ali, of counsel and on the briefs, and Brendan E.
Ashe and Gregory M. Batt, on the briefs).

Joseph C. Tauriello argued the cause for respondent (The
Law Office of Joseph C. Tauriello, attorneys; Joseph C.
Tauriello, on the brief).

Joel L. Shain submitted a brief on behalf of amicus curiae
New Jersey State League of Municipalities (Shain

Schaffer, attorneys; Joel L. Shain, of counsel, and
Gregory B. Pasquale and Xiaosong Li, on the brief).

Michelline Capistrano Foster, Deputy Attorney General,
submitted a letter in lieu of a brief on behalf of intervenor
(Matthew J. Platkin, Attorney General, attorney; Melissa
H. Raksa, Assistant Attorney General, of counsel).

---

PER CURIAM

---

We affirm the judgment of the Appellate Division substantially for the reasons stated in Judge Accurso's comprehensive and thoughtful opinion. See Verizon N.J., Inc. v. Borough of Hopewell, ___ N.J. Super. ___ (App. Div. 2023). We concur with the Appellate Division "that 'local telephone exchange' as used in N.J.S.A. 54:4-1 means a local telephone network within a defined geographical area as depicted on Verizon's tariff exchange maps." Id. at ___ (slip op. at 52). We add the following comments.

As the Appellate Division noted, the phrase "local telephone exchange" in N.J.S.A. 54:4-1 is a term of art. Id. at ___ n.22 (slip op. at 55 n.22). "In general, technical terms, terms of art, and terms with existing legal meanings . . . are understood to have been used [by the Legislature] in accordance with those meanings." In re Lead Paint Litig., 191 N.J. 405, 430 (2007). When a statute that uses a term of art was enacted decades ago, as this one was, courts should look to the commonly understood technical meaning of the term

2

"during the timeframe when the phrase was chosen by the Legislature" to "glean what the Legislature understood the phrase to mean when choosing it." Norfolk S. Ry. Co. v. Intermodal Props., LLC, 215 N.J. 142, 168 (2013).

With those principles in mind, we conclude that the Legislature understood a "local telephone exchange" to mean a geographic area depicted in Verizon's tariff maps, both when it first adopted the term in 1989 and when it amended the relevant clause of N.J.S.A. 54:4-1 in 1997. See L. 1989, c. 2, § 4; L. 1997, c. 162, § 60.

The 1982 Modification of Final Judgment in the AT&T divestment litigation, for example, demonstrates that "exchanges" were understood to be geographic areas within which the Bell Operating Companies provided local telephone service. See United States v. AT&T Co. (Modification of Final Judgment), 552 F. Supp. 131, 229 (D.D.C. 1982) ("'Exchange area,' or 'exchange' means a geographic area established by a [Bell Operating Company] in accordance with the following criteria: 1. any such area shall encompass one or more contiguous local exchange areas serving common social, economic, and other purposes, even where such configuration transcends municipal or other local governmental boundaries . . . ." (emphasis added)). Verizon's own tariff, filed with the New Jersey Board of Public

3

Utilities from 1993 until 2014, reflected that same interpretation, discussing "[t]he territorial boundaries of the exchange areas."

Verizon now claims that it always understood a "local telephone exchange" to be defined not geographically, but by the set of NPA-NXX codes associated with a particular rate center. But the record contains no evidence that Verizon shared that view with the Legislature either in 1989 or in 1997, or that the Legislature adopted such a view. Indeed, the record contains no written evidence or documentation from the relevant time period to support Verizon's preferred definition at all. Instead, the written evidence before this Court from the relevant time period, including Verizon's own documents, points only toward a geographical definition of a "local telephone exchange."

Verizon also argues that the Appellate Division's decision "subject[s] Verizon and other [incumbent local exchange carriers] to an outdated tax assessment method, divorced from current practices within the telecommunications industry." That may be true. But this Court is constrained to interpret the statutory text before it; we may neither update nor amend the text to better fit current technological realities. The Legislature currently has two bills pending before it that would amend the definition of a "local exchange telephone company" in N.J.S.A. 54:4-1. See S. 1535 (2024);

4

S. 2124 (2024).  If the Legislature agrees with Verizon that the current tax assessment method is out of date, it is of course free to amend the statute.

CHIEF JUSTICE RABNER and JUSTICES PATTERSON, SOLOMON, PIERRE-LOUIS, WAINER APTER, and NORIEGA join in this opinion. JUSTICE FASCIALE did not participate.